IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DANNY HAMMOND, )
)
        Plaintiff, )
)
vs. ) Case No. 14-0032-CV-W-ODS
)
FEDERAL NATIONAL MORTGAGE )
ASSOCIATION, )
)
        Defendant. )

<u>ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS AND (2) GRANTING MOTION TO
COMPEL AND DIRECTING *BOTH* PARTIES TO PRODUCE DOCUMENTS</u>

Pending are two motions filed by Defendant (Federal National Mortgage Association, or "FNMA"): a Motion to Dismiss and a Motion to Compel. The Motion to Dismiss (Doc. # 70) is granted in part and denied in part and the Motion to Compel (Doc. # 88) is granted.

I. BACKGROUND

This case started in state court on November 22, 2013 but was removed to federal court on January 10, 2014. The Corrected Second Amended Complaint ("SAC") was filed on June 23, 2014 (Doc. # 61) and is the operative pleading in this case. The Court is required to liberally construe the SAC, and Plaintiff is held to a less exacting pleading standard than a represented party would be. E.g., Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 849 (8th Cir. 2014). In addition, the Court should not focus on the legal theories identified by a pro se plaintiff and instead should examine the factual allegations to determine whether they could support relief under any possible theory. Id. at 848-49. When viewed in this light (and not the standard FNMA espouses, which does not account for Plaintiff's pro se status), the Court interprets the SAC in the following manner.

As stated, this suit was originally filed in state court, apparently in anticipation of a nonjudicial foreclosure sale on real property that occurred on November 25, 2013. Back in July 2002, the owners of the property – Claudia Bill-Copping and Frederick Copping ("the Coppings") – took out a mortgage on the property; the loan was financed by First Magnus Financial Corporation. First Magnus conveyed its interest to Bank of America, and then Bank of America conveyed its interest to FNMA.

Plaintiff was not a party to these transactions. However, he alleges he has an interest in the property. He alleges that he had a Promissory Note in the amount of $81,526.36 and the Note was secured by a Deed of Trust. He further claims that he foreclosed on the property in August 2013. SAC, p. 24.

The FNMA foreclosure occurred on November 25 as planned and FNMA was the successful bidder. The SAC lodges many general complaints about this sequence of events, some of which are repeated on numerous occasions over the span of the SAC's thirty-three pages. For instance, the SAC

- Complains the Promissory Note was not presented to the mortgagees or Plaintiff at the sale or at any other time,
- Asserts documents were not properly recorded with the Recorder of Deeds,
- Complains that the original transaction between First Magnus and the Coppings lacked consideration,
- Utilizes the phrase "holder in due course" in a variety of contexts that do not make any jurisprudential sense,
- Chronicles FNMA's history and status as an entity without any connection to this particular transaction, and
- Casts aspersions on the banking and mortgage industries generally without any connection to this particular transaction.

## II.  DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2

> defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679. A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. E.g., Horras v. American Capital Strategies, Ltd., 729 F.3d 798, 801 (8th Cir. 2013).

Additionally, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (internal quotation marks and citations omitted); see also Stringer v. St. James R-1 School Dist., 446 F.3d 799, 802 (8th Cir. 2006).

### A.

The vast majority of the SAC's allegations fail to set forth any legal claim. The general allegations about the banking and mortgage industries do not present a legal theory entitling Plaintiff to relief, nor do his allegations about FNMA's history and legal status. Plaintiff's use of the legal term "holder in due course" does not present any theories, and the factual recitations do not lead to any cause of action.

The contention that the transaction between the Coppings and First Magnus lacked consideration is not something Plaintiff can assert because he was not a party to that transaction. Moreover, his allegations do not substantiate any viable claim. He avers that the Promissory Note was not a contract but rather "was an offer to borrow by

3

[the Coppings] to First Magnus which did not fulfill the necessary element of consideration in the negotiation and transaction by providing the funding," and that the Coppings' "offer to pay back a loan to First Magnus if First Magnus actually funded the loan was just 'an offer unaccepted'." SAC, p. 6. It may be that these facts are intended to support Plaintiff's claim that FNMA bears liability for its (or another's) failure to show the Promissory Note to Plaintiff or the Coppings at the time of foreclosure – but this claim is not viable and must be dismissed. E.g., Lackey v. Wells Fargo Bank, N.A., 747 F.3d 1033, 1038-39 (8th Cir. 2014). Plaintiff's allegations decrying the use of MERS to record property records and transactions also fails to support a viable legal theory. Finally, Plaintiff's claim under the Missouri Merchandising Practices Act fails as a matter of law because Plaintiff did not enter a transaction or have a relationship as an actual or would-be customer with FNMA. Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 415 n.3 (Mo. 2014) (en banc).

B.

The Court interprets the SAC as presenting a viable claim seeking to quiet title to the property. Plaintiff alleges that he had an interest in the property and he foreclosed on the property before the November 2013 nonjudicial foreclosure. FNMA recognizes the potential legal viability of this claim, but asks the Court to reject it because Plaintiff has not provided documentation to support it. However, this is a Motion to Dismiss: Plaintiff is not obligated to prove his allegations to the Court at this juncture. The facts alleged may also support a claim for damages for wrongful foreclosure, particularly if one credits (as the Court must, given the procedural posture) Plaintiff's claims that documents supporting FNMA's entitlement to foreclose were not properly recorded or that there were other defects in the foreclosure process.

Before the Court is a motion to dismiss for failure to state a claim. The Court cannot evaluate Plaintiff's allegations that he had a security interest in the property that was superior to FNMA's, nor can it reject them. The Court cannot evaluate Plaintiff's allegations that he has an ownership interest that survives the November 2013

foreclosure. These issues may be resolvable on summary judgment, but they cannot be resolved at this time.

## C.

In December 2013, FNMA filed an unlawful detainer action in the Circuit Court of Cass County, Missouri, where the case was assigned to that Court's Associate Circuit Division. Plaintiff was among the defendants in that case. In June 2014, the Associate Circuit Court issued a Journal Entry of Judgment in FNMA's favor. Plaintiff sought a trial de novo in the Circuit Court. On September 30, the Circuit Court granted FNMA's Motion for Summary Judgment. Plaintiff did not appeal so the Circuit Court's judgment is final.

Upon learning of the unlawful detainer action, this Court became interested in the possible preclusive effect of the state court's decision. On the surface, it seemed that a decision awarding possession of the property to FNMA would necessarily include a determination that FNMA had valid title to the property. To that end, on August 26 – after the Associate Circuit Court ruled – this Court sought guidance from Defendant and to that end issued an Order directing Defendant "to file a Motion addressing the preclusive effect of that Judgment." FNMA complied; however, FNMA invites the Court to issue a ruling that conflicts with governing law.

FNMA contends the Plaintiff could have asserted his claims of superior title and wrongful foreclosure in the unlawful detainer suit, so the res judicata effect of that case's judgment bars this case. FNMA specifically equates the state court's determination of who should have possession with a determination of proper title. Doc. # 83 at 8. This is simply not a correct statement of law. In 2013, the Missouri Supreme Court conducted a detailed discussion of the history and nature of unlawful detainer actions. "From the outset . . . such actions were confined to the question of possession and did not purport to address questions of ownership or validity of title." Wells Fargo Bank, N.A. v. Smith, 392 S.W.3d 446, 453 (Mo. 2013) (en banc). As originally constituted (before Missouri was even a state), the action was not "a bar to any other action at law, brought by either party, either to try the right of the property or for intermediate damages." Id. These

5

understandings were incorporated in – and remain a part of – the statute as it exists today. Thus, "[i]n light of the statutory limitations on the substantive scope of unlawful detainer actions, Missouri courts have repeatedly stated that equitable defenses and counterclaims are not permitted in response to such claims." Id. at 454. More to the point: FNMA is simply wrong to suggest Plaintiff could have raised asked the Associate Circuit Court to quiet title during the unlawful detainer action, or assert a claim for wrongful disclosure. "[S]tatutory unlawful detainer actions do not, cannot, and never were intended to resolve questions of ownership or the validity of title." Id. at 456.

The Missouri Supreme Court counsels that a defendant in an unlawful detainer action may contest title *in a separate action.* E.g., id. ("The Smiths are not barred from raising equitable theories, claims of wrongful foreclosure, or other challenges to Wells Fargo's title. However, they are barred from trying to litigate such issues in response to Wells Fargo's limited action for possession under chapter 534. *The Smiths must litigate these claims in a separate proceeding . . . .*").

When Plaintiff presented Smith to support his contention that he could not have contested title in the unlawful detainer action, FNMA relied on a passage from that case for the proposition that title is relevant to show who deserves possession. Disappointingly, FNMA did not provide the entire context for the quote, which appears below:

> However, in such cases, the foreclosure purchaser's right to possession is based upon the ***fact*** of the sale as demonstrated by the deed, *not on the ultimate validity of the title that the deed reflects.* Such use of title is merely an application of the long-standing principle that, even though *a challenge to title may not be asserted in defense of an unlawful detainer action,* title remains relevant and admissible "in so far as it may be necessary to show who is entitled to possession, as the right to possession is the question at issue." Suedmeyer v. Meyer, 237 S.W. 882, 883 (Mo.App.1922). *See also Hafner Mfg. Co. v. City of St. Louis,* 262 Mo. 621, 172 S.W. 28, 31 (Mo. banc 1914) ("title is not tried out as a determinative factor" but may be introduced where relevant to show the right of possession).

Smith, 392 S.W.3d at 462 (first emphasis in original; subsequent emphases added). This paragraph does not suggest Plaintiff could have contested FNMA's title in the unlawful detainer action. To the contrary, it confirms that he could not.

6

FNMA also invokes the Rooker/Feldman doctrine to argue that this Court lacks jurisdiction over Plaintiff's case because to rule in his favor would undermine the state court's decision. The Court rejects this argument for two reasons. First, as set forth above, a ruling in Plaintiff's favor would not undermine the state court's decision because the state court did not (and could not) consider issues of title. Indeed, this separate action is exactly what the Missouri Supreme Court directs must occur, so it cannot be understood as undermining the state court's decision. Second, as a purely technical matter even if the issues were the same the problem would not be one of jurisdiction. FNMA overstates the reach of the Rooker/Feldman. Despite citing the Supreme Court's 2005 decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., FNMA fails to note that decision's directive that the doctrine does not apply when there are parallel cases and the state court reaches a decision first. 544 U.S. 280, 292 (2005). "Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. . . . Preclusion, of course, is not a jurisdictional matter. In parallel litigation, a federal court may be bound to recognize the claim- and issue- preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." Id. at 293. Even if a federal plaintiff asserts a claim that suggests a state court decision is wrong, "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. (quotation omitted).

D.

Pending is FNMA's Motion to Compel, which asks the Court to require Plaintiff provide his Rule 26 disclosures. Specifically, FNMA seeks an order requiring Plaintiff to provide

1. names of individuals likely to have discoverable information, along with the subjects of that information to support its claims or defenses;

2. a copy or description and location of all documents and electronically stored information in his possession, custody or control to support its claims or defenses;

7

3. a computation of damages claimed by the disclosing party, and;

   4. any applicable insurance agreement.

Although FNMA does not indicate it has supplied its Rule 26 disclosures, the Court presumes it has done so.[1]  Regardless, in an abundance of caution, the Court directs both sides to provide the information described above.  Included in this information shall be all documentation reflecting both parties' ownership interest in the property.  Both sides shall produce this documentation to the other side on or before December 15, 2014.

### III.  CONCLUSION

   The Motion to Dismiss for Failure to State a Claim is granted in part and denied in part.  The only remaining parties are Danny Hammond and FNMA, and the only claims remaining are Hammond's claims seeking to quiet title to the property and damages for the wrongful foreclosure of his interest.  The Motion to Dismiss is granted to the extent Plaintiff's Corrected Second Amended Complaint asserts any other claims.
   The parties shall provide their Rule 26 disclosures on or before December 15, 2014.  The disclosures shall, at a minimum, include all documentation reflecting the parties' ownership interest in the property.

IT IS SO ORDERED.

DATE: November 20, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[1] The Court does not know why it has taken FNMA nearly three months to seek the Rule 26 disclosures, particularly given that discovery closes on December 22 of this year.  There is no present need to delve into this matter further.